UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
DEC 29 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-542-GWU

JANICE SIMPSON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th Cir. 1990). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Crouch, 909 F.2d at 855.

1

Simpson

The regulations outline a five-step analysis for evaluating disability claims. See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

Step four refers to the ability to return to one's past relevant category of work, the plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which

2

appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Janice Simpson, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the cervical spine, osteoarthritis, borderline to low average intelligence, a history of cervical strain, chronic neck and left shoulder pain, left upper extremity weakness, complaints of bilateral hand swelling and loss of hearing in the left ear. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not disabled. (Tr. 18-22). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether the plaintiff could perform any jobs if she were capable of light level exertion, and also had the

following non-exertional impairments. (Tr. 423). She: (1) could not climb ladders, ropes, or scaffolds or perform repetitive overhead work ; (2) could only occasionally climb stairs/ramps or crawl; and (3) would be limited to simple, non-detailed tasks where co-worker and public contact would be casual and infrequent, where supervision would be direct and non-confrontational, and where changes in the workplace would be infrequent and gradually introduced. (Tr. 423-4). The VE responded that there were jobs that such a person could perform, listing, as examples, the jobs of assembler, inventory clerk, weigh clerk, hand packer, and sorter. (Tr. 424). In response to questioning from the ALJ, the VE stated that he used several sources for his answer, including the Dictionary of Occupational Titles (DOT), the Census Bureau, and the Occupational Outlook Handbook, as well as personal experiences. (Id.). He stated that he had not "intentionally deviated," in the ALJ's words, from any of these materials. (Id.).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff had filed prior applications for benefits, including an SSI application in 1997, which the Commissioner denied in a decision upheld by this Court in a Memorandum Opinion, Order, and Judgment dated March 28, 2001. Simpson v. Halter, London Civil Action No. 00-24 (E.D. Ky.). The plaintiff applied for DIB and SSI and August, 1998, and these applications were eventually denied

5

through the level of an ALJ decision entered on October 26, 2001. (Tr. 48-55). The ALJ in the present case declined to reopen the prior applications and noted that he was bound by the holding in <u>Drummond v.Commissioner of Social Security</u>, 126 F.3d 837 (6th Cir. 1997) to follow the residual functional capacity found by the prior ALJ, absent new and material evidence or a showing of changed circumstances. (Tr. 12). The prior ALJ had found that the plaintiff was capable of performing light level exertion, with standing and walking a maximum of six hours in an eight-hour day and sitting the remainder of the time, with no climbing of ladders, ramps, or stairs, no repetitive overhead work, and occasional crawling. (Tr. 55).

One of the plaintiff's arguments on appeal is that the ALJ in the present case omitted any restriction on climbing of stairs, as mentioned in the prior, final decision. However, new evidence submitted in connection with the present applications would clearly have justified a deviation from the old findings. The new evidence included a residual functional capacity form completed by the plaintiff's treating physician, Dr. Jose Echeverria, which indicates that the plaintiff did not have a medically determinable impairment which would reasonably be expected to cause frequently recurring episodes of severe pain, that she had no lifting, carrying, standing, or walking restrictions,[1] and that she could "occasionally" climb, stoop, crouch, and

---

[1] Dr. Echeverria did state that sitting would be limited to an unspecified degree, but did not cite a basis for the limitation. (Tr.. 314). The plaintiff has not raised the issue of sitting on appeal, in any case.

6

crawl. (Tr. 313-14). Thus, the ALJ's residual functional capacity finding was consistent with that of the treating physician. Moreover, a consultative physical examination by Dr. Mark Burns in February, 2004, showed no objective abnormalities other than complaints of pain on range of motion testing. (Tr. 348-52). Dr. Burns opined that the plaintiff could perform "medium" level exertion with no other restrictions. This, too, supports the ALJ's findings. Finally, state agency reviewing physicians opined in May and August, 2002, that the plaintiff could perform light level exertion, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs and crawl, and could never reach overhead. (Tr. 279-86). In summary, the climbing restrictions in the hypothetical question are supported by every new source that offered an opinion, and the ALJ could reasonably have found changed circumstances since the prior, final decision.

The plaintiff's other argument on appeal is that the VE's testimony was inconsistent with the DOT in an important respect. The plaintiff avers that her full scale IQ score of 80 as found by psychologist Gary Maryman (Tr. 368)[2] places her

---

[2] While the IQ scores were held to be valid, the examiner did note that her work did at times seem to be a bit careless, including portions of the WAIS-III. (Tr. 370). He described her as having upper borderline intellectual functioning, but approaching low average range. (Tr. 371). He specifically stated that she could perform tasks of *"moderate complexity"* and stated that she was able to show good focus, attention and concentration during the examination. (Tr. 370). Maryman concluded his report by noting a GAF of 70, which is at the top range of having "some mild symptoms . . . but generally functioning pretty well" as per the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) (DSM-IV). Thus, Maryman's report in its totality does not appear to

Simpson

in the lowest nine percent of the U.S. population and that, according to the DOT, persons in this category are unable to perform many of the unskilled jobs given by the VE. As previously noted, the ALJ had ascertained that the VE did not believe that his testimony deviated from the DOT, as required by Social Security Ruling 00-4p. However, even if the VE was mistaken in his belief, the Sixth Circuit has clearly ruled that an ALJ is not bound by the information in the DOT, and may accept the testimony of a VE instead. Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003); Conn v. Secretary of Health and Human Services, 51 F.3d 607, 610 (6th Cir. 1995) (citations omitted). Therefore, little purpose would be served by a remand.

The decision will be affirmed.

This the 29 day of December, 2005

G. WIX UNTHANK
SENIOR JUDGE

---

support the type of mental deficit range urged by the plaintiff.

8